LA CLEDE COUNTY (DARLINGTON v.). See Case No. 3,577.

LA COSTE (UNITED STATES v.). See Case No. 15,548.

LA CROSSE RAILROAD (SOUTER v.). See Case No. 13,180.

## Case No. 7,969.

### LA CROSSE RAILROAD BRIDGE.

[2 Dill. 465.] [1]

Circuit Court, D. Minnesota. 1873.

RAILROAD BRIDGE AT LA CROSSE—CONTRACT RATIFIED, WITH CONDITIONS ANNEXED.

1. Contract for the construction of a bridge across the Mississippi river at La Crosse, between the bridge company and the Southern Minnesota Railroad Company (in the hands of a receiver appointed by this court, in a foreclosure proceeding), ratified, subject, however, to certain conditions limiting the duration of the contract, and to regulate the compensation to be paid for the use of the bridge by the railroad company, or its assigns or successors, or the purchasers at the foreclosure sale under the deed of trust.

2. The order of the court *held* not appealable by bondholders not parties to the suit.

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

This was a bill in chancery by the plaintiffs, to foreclose two certain mortgages given by the defendant, to secure some five million dollars of its bonds, on about one hundred and eighty miles of its road, and franchises and property appertaining thereto. The road commences on the west bank of the Mississippi river, opposite La Crosse, and is completed westward one hundred and sixty-seven miles. The plaintiff applied to his honor Judge Nelson, at chambers, and obtained the appointment of a receiver, who took possession of the road and property mortgaged, with directions to operate the road pending the suit. The appointment of receiver was opposed by the company, and the suit was also contested. See In re McElrath [Case No. 8,780]. The railroad company had the franchise and right to construct a railroad bridge across the Mississippi river, and extend its track over the same, so as to connect its road with La Crosse, and with the roads running thence east to Milwaukee and Chicago; but the franchise to construct and operate such bridge was not covered by or embraced within said mortgages. The company was also empowered, by its charter, to create and issue, in such manner and on such terms as it might deem expedient, special stock on any part of its road, and to agree with the holders thereof for the appropriation of the net earnings of any portion of its road to the payment of dividends on such special stock, which agreement should be effectual to secure to the holders of such special stock the application of such net earnings, as against any future act of the company, or any of its general liabilities.

In this state of the case, the plaintiffs filed a special petition in the suit, setting forth the foregoing facts, and that the construction of such railroad bridge would be of great advantage to the road in the transaction of its business, and enhance the value of the road and the security of the bondholders under the mortgages; and that a contract was about to be entered into between said company and certain capitalists, whereby the company was to issue its special stock to the amount of one million dollars ($1,000,000), in consideration of which such capitalists were to construct said bridge, control, manage, and keep the same in repair, and that certain tolls were to be charged for the use of the same, and all the net earnings of the same were to be appropriated as dividends on such special stock; the company binding itself to operate its road over said bridge when constructed, in the transportation of freight destined to cross the river at that point, so far as it could control the same; but that the execution of said contract, and the construction of the bridge thereunder, depended upon having the interests represented by these plaintiffs and by the receiver also bound thereby. And the petition prayed an order of the court granting permission to the plaintiffs and to the receiver to become parties to such agreement, so far as to bind the interests thereto, represented by them under said mortgages in said suit, and that such order be made a part of the final judgment or decree in the action, so that all rights acquired under said mortgages, through final judgment or decree in the action, should be subject to such agreement. The petition was presented to the circuit judge at chambers, at Des Moines, May 23d, 1873, all parties in the action appearing and assenting thereto; whereupon an order was made granting the prayer of the petition, with a special provision that any contract made under or by virtue of the order, should, before the same should have any validity, be presented to the court for its ratification and approval, the power to ratify or reject being expressly reserved to the court. At the regular June term of the court, the matter came up for further consideration, and a contract was presented to the court for approval, when Alexander Mitchell, Russell Sage, and W. C. Gurney appeared by counsel, and asked to be made parties in this action, as bondholders under the mortgages to the amount of about $100,000, for the purpose of opposing the ratification of the contract, or the granting of any such order as prayed for; whereupon an order was made specially admitting them as party defendants, to be heard in opposition to the approval of the contract. None other of the $5,000,000 of bondholders appeared to oppose the contract, and the express assent of a large majority was shown. The contract, as presented, was of unlimited duration, and prescribed fixed rates of compensation to the bridge company.

H. J. Horn and Gilfillan & Williams, for plaintiffs.

J. M. Gilman and Bigelow, Flandrau & Clark, for railroad company.

J. W. Cary, for Mitchell, Sage, and Gurney.

Before DILLON, Circuit Judge, and NELSON, District Judge.

PER CURIAM. Although the parties to the record consent to the contract as made, yet, upon consideration, we think it advisable (since the future cannot be forecast) to annex to our approval of the contract the following conditions or modifications:—

First. The rates, tolls, and compensation provided for in said contract to be paid for the use of the bridge and track by the said company, its assigns, successors, or purchasers, at the foreclosure sale under the trust deed in suit, or their assigns or successors, shall be and remain in force during the period of ten years after the completion of said bridge, and no longer, unless by the consent of parties then in interest.

Second. At the end of ten years, the tolls

shall be fixed at rates which shall be just and reasonable for both parties then in interest, to be agreed upon every five years, and if the parties cannot agree, the question shall be a judicial one, to be determined by a competent court of equity jurisdiction, upon bill filed for that purpose.

Third. At the expiration of twenty years from the completion of the bridge, and successively at periods of five years thereafter, the company, or its assigns, or its successors, or purchasers at the foreclosure proceedings under the deed of trust now in suit, may elect to purchase said bridge, and the rights and franchises in connection therewith, and if the parties cannot agree upon the price, the same shall be determined by a court of chancery, upon bill filed for that purpose, which price shall be fixed by the chancellor, subject to appeal, at such sum as, under all the circumstances, shall then appear to be fair, just, and equitable, having reference to the profits which have been derived by the bridge company, the value of the structure and the property, and the value of the bridge franchise across the river at that time and place, and any other circumstances that will conduce to the ascertainment of an equitable result.

Fourth. The court decides nothing as to the exact situs of the bridge, but leaves that to the determination, under the laws of congress and of the state, of the parties to the contract.

The said Mitchell, Sage, and Gurney, by their counsel, thereupon claimed an appeal from the order of the court in the premises, but the court, upon consideration, decided it was not an appealable order, and refused to allow the same.

---

LA CROSSE & M. R. CO. (BRONSON v.). See Case No. 1,930.

LA CROSSE & M. R. CO. (CLEVELAND v.). See Case No. 2,887.

LA CROSSE & M. R. CO. (HOWARD v.). See Case No. 6,760.

LA CROSSE, ETC.. PACKET CO. (GERMANIA INS. CO. v.). See Case No. 5,361.

LA CROSSE, ETC.. PACKET CO. (KELLOGG v.). See Case No. 7,663.

---

## Case No. 7,970.

### In re LACY.

[4 N. B. R. 62 (Quarto, 15); 1 3 Am. Law T. 215; 1 Am. Law T. Rep. Bankr. 226.]

District Court, W. D. Texas. Nov., 1866.

LIENS—RECORD OF PRIORITY—MORTGAGE RECORDED PRIOR TO JUDGMENT RECOVERED PRIOR TO THE EXECUTION OF THE MORTGAGE — PREFERENCE.

Where a creditor claims a lien by virtue of a judgment against the bankrupt, recovered on

1 [Reprinted from 4 N. B. R. 62 (Quarto, 15), by permission.]

5th November, 1866, but which was not recorded in the clerk's office until 16th October, 1867; and another creditor holds a mortgage executed by bankrupt, and recorded 7th April, 1867, *held*, the mortgage lien has priority over the judgment.

[In the matter of W. Y. Lacy, a bankrupt.]